**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

TAKIA COE,

     Plaintiff,

     v.                          Case No. 10-C-915

CITY OF MILWAUKEE
HOUSING AUTHORITY,

     Defendant.

---

# DECISION AND ORDER

---

## NATURE OF CASE

On October 1, 2010, the plaintiff, Takia Coe, filed this action against the City of Milwaukee Housing Authority (HACM) in Milwaukee County Circuit Court. The complaint, which was filed pursuant to Wis. Stat. §68.13, challenges the defendant's decision to terminate the plaintiff's benefits under the Section Eight Housing Choice Voucher Program. On October 14, 2010, the defendant removed this matter to this court, asserting that the case is governed by the federal regulations which apply to the federally funded Rent Assistance Program ("RAP) from which the plaintiff was terminated, 24 C.F.R. § 982.555.

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The case was assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72.1 (E.D. Wis.). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73.1 (E.D. Wis.).

On October 7, 2010, before this matter was removed to this court, the plaintiff filed a motion for temporary relief in Milwaukee County Circuit Court in which she sought an order

staying the termination of her rent assistance while the case is pending. (Docket # 4). On November 12, 2010, the parties filed a stipulation, according to which the defendant agreed to extend the plaintiff's rent assistance until December 31, 2010, to permit the plaintiff time to file a request for injunctive relief with this court. On December 1, 2010, the plaintiff filed a motion for a preliminary injunction seeking an order preventing the defendant from terminating her housing benefits while this case is pending. In a telephone conference with this court on December 23, 2010, the parties agreed to extend the plaintiff's benefits through January 31, 2010, to provide time for a hearing to address the motion. The court held the hearing on January 20, 2011.

## FACTUAL BACKGROUND

The plaintiff was admitted into the Rent Assistance Program in 1998. On April 29, 2010, the plaintiff received a Notice Regarding Continued Eligibility which advised her that she may be terminated from the program. (Affidavit of Erika Jacobs Petty [Petty Affidavit], Exh. A at 1; Lou Williams' Statement of Proceedings and Submission of Documents to the Court [Williams' Statement], Exh. 1 at 11). The notice further provided that the plaintiff could request an informal hearing to review the program decision. (Petty Affidavit, Exh. A at 2; Williams' Statement, Exh. 1 at 12).

The plaintiff requested an informal hearing, which was held on June 24, 2010. Two employees from the RAP testified on behalf on HACM, Ms. Lou Williams and Ms. Jacqueline Loberg. The following people testified on the plaintiff's behalf: Ariam Chaney-Coe, the plaintiff's daughter; Javon Lattimore, the plaintiff's daughter's boyfriend; Danta Portis, the plaintiff's boyfriend and Tamisha Portis, Danta Portis's cousin.

On September 2, 2010, the hearing officer issued a Result of Informal Hearing/Review Decision. According to the decision, "neither [the plaintiff] nor her witnesses provided any

compelling testimony to rebut the findings of [Rent Assistance]." (Petty Affidavit, Exh. E at 4; Williams' Statement, Exh. 1 at 4). The plaintiff filed this certiorari action after receiving the decision.

## MOTION FOR A PRELIMINARY INJUNCTION

"An equitable, interlocutory form of relief, 'a preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it.'" Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America, Inc., 549 F.3d 1079, 1085 (7th Cir. 2008) (quoting Roland Mach. Co. v. Dresser Indus., Inc., 749 F.2d 380, 389 [7th Cir. 1984]). In determining whether to issue a preliminary injunction, "a district court engages in an analysis that proceeds in two distinct phases: a threshold phase and a balancing phase." Girl Scouts of Manitou Council, Inc., 549 F.3d at 1085-86.

To survive the threshold phase, a party seeking a preliminary injunction must demonstrate that 1) absent a preliminary injunction, it will suffer irreparable harm in the interim period prior to a final resolution of its claims; 2) traditional legal remedies would be inadequate; and 3) its claim has some likelihood of success on the merits. Id. at 1086; see also, Promatek Industries, Ltd. v. Equitrac Corp., 300 F.3d 808, 812 (7th Cir. 2002). If the moving party fails to demonstrate any one of these three threshold requirements, the court must deny the injunction. Girl Scouts of Manitou Council, Inc., 549 F.3d at 1086 (citing Abbott Labs. v. Mead Johnson & Co., 971 F.2d 6, 11 [7th Cir. 1992]). If, however, the moving party can satisfy these conditions, the court then proceeds to the balancing phase of the analysis. Girl Scouts of Manitou Council, Inc., 549 F.3d at 1086.

In this balancing phase, "the court weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." Id. "In so

doing, the court employs a sliding scale approach: '[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor.'" Id. (quoting Roland Mach. Co. v. Dresser Indus., Inc., 749 F.2d 380, 387 [7th Cir. 1984]). The court's balancing process also considers any effects that granting or denying the preliminary injunction would have on the public interest. Girl Scouts of Manitou Council, Inc., 549 F.3d at 1086.

## ANALYSIS

The plaintiff seeks an order enjoining HACM from terminating her Section Eight rent assistance while this case is pending. The plaintiff asserts that a preliminary injunction is proper because she is likely to succeed on the merits, she will suffer irreparable harm without an injunction, there is no adequate remedy at law, and the balance of harms weighs in favor of granting the injunction.

The plaintiff raises several challenges to the decision to terminate her from the Section Eight housing program. She asserts that Wis. Stat. Ch. 68 applies and that the hearing procedures did not comply with the requirements of the statute. In the alternative, the plaintiff contends that the defendant did not comply with the applicable federal law in several respects: (1) the initial notice of her termination did not have the required specificity; (2) the hearing officer failed to provide an opportunity for her to cross-examine witnesses; (3) the hearing officer did not confine her decision to evidence that was presented at the hearing; and (4) the decision was not promptly delivered to her as required by the federal regulations.

In response, the defendant maintains that the plaintiff is not likely to succeed on the merits of her claim and is not entitled to a preliminary injunction for several reasons. The defendant asserts that federal law applies to this case because it opted out of Wis. Stat. Ch.

68 in the implementation of Section Eight housing programs. Furthermore, the defendant maintains that it complied with applicable federal law and regulations.

Chapter 68 of the Wisconsin Statutes provides procedures for review of determinations by municipal authorities. It also provides that a municipality may elect not to be governed by that chapter if it adopts a resolution or ordinance which provides procedures for administrative review of decisions. Wis. Stat. § 68.16. Wisconsin case law requires that a resolution or ordinance opting out of Wis. Stat. Ch. 68 must "show the city's intent to opt-out." Tee & Bee, Inc. v. City of West Allis, 214 Wis.2d 194, 195 (Wis. Ct. App. 1997).

The defendant adopted Resolution Numbers 7007 and 7039 in 1983. These resolutions state that HACM "elects not to be governed by Chapter 68 of the Wisconsin Statutes in implementation of Section Eight Existing Housing Program." (Affidavit of Matthew Granitz [Granitz Affidavit], Exh. 1 at 2-3). The resolutions also state that the defendant "implements federal law in administrative review of determinations of the Section Eight Existing Housing Program." Id. These resolutions clearly express the intent of the defendant to opt-out of Wis. Stat. Ch. 68 in the implementation of Section Eight housing programs and simultaneously adopt federal law with respect to the administrative review of determinations of that program.

The plaintiff asserts that the opt-out resolutions must themselves contain the administrative review procedures and that these resolutions apply only to the Section Eight housing programs in existence at the time they were passed. The plaintiff has presented no authority holding that the incorporation of the federal administrative review regulations by reference fails to comply with the requirements of Wis. Stat. § 68.16, or that the resolutions do not apply to subsequent amendments to Section Eight housing programs. Therefore, since HACM opted-out of Wis. Stat. Ch. 68 in its implementation of Section Eight housing programs,

the court finds that the federal regulations which govern federally-funded housing programs apply to this case.

The federal regulations which apply to Section Eight housing programs were enacted by the United States Department of Housing and Urban Development. 24 C.F.R. § 982.1, et. seq. With respect to the sufficiency of a termination notice, federal regulations require that the notice must "contain a brief statement of reasons for the decision." 24 C.F.R. §982.555(c)(2)(I). The purpose of the notice is to "'enable [the tenant] to prepare rebuttal evidence to introduce at his hearing appearance.'" Driver v. Housing Auth. of Racine County, 289 Wis. 2d 727, 739 (Wis. Ct. App. 2006) (quoting Edgecomb v. Housing Auth., 824 F. Supp. 312, 315 [D. Conn. 1993]). Accordingly, a sufficient notice would "specify *who* had violated *what* specific obligation and *when* the violation occurred." Id. at 732 (emphasis in original). Courts also have required that notices provide the source of any information obtained by the housing authority. Id. at 739 (quoting Billington v. Underwood, 613 F.2d 91, 94 [5th Cir. 1980]). The notice must "adequately explain [the] rationale" of the housing authority. Bratcher v. Housing Authority of the City of Milwaukee, 327 Wis. 2d 183, 200 (Wis. Ct. App. 2010).

In Banks v. Trainor, 525 F.2d 837 (7th Cir. 1975), the court addressed the sufficiency of notices sent to food stamp recipients which stated that they would need to pay more for food stamps because the agency had adopted a new method of calculating benefits. The notices were held to be insufficiently specific because they did not reveal how income figures were calculated or provide the data underlying those calculations. Id. at 838-42 ("The notices sent to this class did not contain a breakdown of income and deductions so that the recipients could determine the accuracy of the computations."). Courts also have found that the written notice must be sufficiently specific even if the tenant has actual notice of the details regarding her termination. Driver, 289 Wis. 2d at 732. Otherwise, it would be an invitation for "housing

- 6 -

authorities to dispense with proper notice whenever they determined for themselves that the tenant 'must have known' the basis for the allegations against them." Id.

The April 29, 2010, Notice Regarding Continued Eligiblity sent to the plaintiff reads in relevant part as follows:

> 1. Unreported Income. Specifically: You have unreported income from UMOS, QPS, Hatch, and Most Precious Transit in the amount of $14,468.75. You now owe the program a total of $4,340.63 in overpayments made on your behalf as a result of your failure to report your income in a timely manner.
>
> 2. Unauthorized household members. Specifically: On 4/19/10 program staff questioned you regarding an allegation that you had unauthorized household members. You advised staff that you moved 3 adults and 4 children into your unit in January 2010 without informing the program. You failed to follow the Program's procedures regarding adding a household member.

(Petty Affidavit, Exh. A at 1; Lou Williams' Statement, Exh. 1 at 11).

The notice sent to the plaintiff does not provide the dates when she earned this unreported income. Further, the notice does not explain the basis for the defendant's calculation that the plaintiff had $14,468.75 in unreported income or how the defendant determined that the plaintiff owes the program $4,340.63 in overpayments.

At the hearing, the defendant indicated that because this notice followed a meeting between HACM and the plaintiff on April 19, 2010, the plaintiff was already aware of the reasons for her termination. However, in Driver, the court held that "adequate notice" is defined as "written notice" and that there is no exception for actual notice. Driver, 289 Wis. 2d at 743-45 (citing Morales v. McMahon, 223 Cal. App. 3d 184 [Ct. App. 1990]; Ortiz v. Eichler, 616 F. Supp. 1046, 1062 [D. Del. 1985]; Vargas v. Trainor, 508 f.2d 485, 489-90 [7th Cir. 1974]). Therefore, the plaintiff has demonstrated a likelihood of success on the merits with respect to whether the written notice she received was sufficiently specific.

Federal regulations provide that the housing authority and the tenant "may question any witnesses." 24 C.F.R. 982.555(e)(5). This court has reviewed the transcript of the hearing very carefully. The plaintiff, who was not represented by counsel, was clearly unaware of the procedure for such hearings.

The hearing officer initiated the hearing by explaining to the plaintiff that the "[p]rocedure is that Rent Assistance will go first, then it will be your turn." (Transcript of Informal Hearing dated June 24, 2010 [Hearing Transcript] at 3). The plaintiff was told that when it was her turn she "may testify, call witnesses or submit evidence." Id. At one point, she attempted to introduce evidence and did not realize that she needed to provide the document to the hearing officer. (Hearing Transcript at 19). At another point, the plaintiff attempted to correct a statement by Ms. Loberg. The hearing officer did not permit the plaintiff to speak and reminded her that the defendant goes first and "then it will be your turn." (Hearing Transcript at 9). The hearing officer did not ask the plaintiff if she had any questions to ask Ms. Loberg or Ms. Williams when they had finished presenting their testimony and evidence. The plaintiff was never told that she could ask questions of the HACM witnesses.

In contrast, the hearing officer permitted Ms. Williams and Ms. Loberg to interrupt the plaintiff's testimony several times. (Hearing Transcript at 21, 26, 27, 28, 29, 30, 31). At the end of the testimony of the plaintiff's daughter, Ms. Chaney-Coe, the hearing officer asked Ms. Williams and Ms. Loberg if they had any questions. Ms. Williams then proceeded to questioned Mr. Lattimore. (Hearing Transcript at 38-39).

Informing someone who is unrepresented and unfamiliar with hearing procedures that it will be her "turn" after the other party's testimony is completed in no way conveys to her that she may ask questions of the other party's witnesses. This is especially true where, as here, the plaintiff attempted to speak during HACM's presentation of its case and was reprimanded

and told that her "turn" would come later. Furthermore, the hearing officer asked HACM's witnesses whether they had questions for the plaintiff's witnesses, but did not provide that same opportunity to the plaintiff. Therefore, this court finds that the plaintiff has demonstrated a likelihood of success on the merits on her claim that the defendant did not comply with federal law when the hearing officer failed to advise her that she could question HACM's witnesses. See 24 C.F.R. 982.555(e)(5).

A review of the hearing officer's decision also reveals that she relied in part on evidence that was not discussed at the hearing. Specifically, the decision referenced municipal court records for Danta Portis, in which the address listed for him was the same address as the plaintiff's at the time. The defendant does not dispute that Mr. Portis' municipal court records were never discussed by either party at the hearing. Rather, these records were included in a packet of materials provided to the hearing officer at the hearing. The defendant has submitted a statement attesting to the fact that the records and other documents in that packet "comprise the full record of the hearing conducted on June 24, 2010." (Williams' Statement at 1). This packet of information and its contents were neither identified nor discussed at the hearing. Although the record does not indicate whether the plaintiff was provided the documents during the hearing, the plaintiff did have an opportunity to review her file prior to the hearing.

The federal regulations provide that "[e]vidence may be considered without regard to admissibility under the rules of evidence applicable to judicial proceedings." 24 C.F.R. § 982.555(e)(5). However, the provision regarding the issuance of the decision requires that "[f]actual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing." 24 C.F.R. § 982.555(e)(6). Neither party cites any case law, and this court has not located any, which addresses whether

- 9 -

evidence may be considered "presented" at the hearing if it was provided to the hearing officer in a packet of information, but was never specifically discussed during the hearing.

Courts have acknowledged that, in order to comply with due process, an individual whose rent assistance benefits may be terminated must be afforded both the opportunity to appear personally at a pre-termination hearing in order to present evidence and cross-examine adverse witnesses and also the right to have a decision "'based solely on rules of law and the evidence presented at the hearing.'" Driver, 289 Wis. 2d 727 at 737-38 (quoting Ferguson v. Metropolitan Dev. & Hous. Agency, 485 F. Supp. 517, 522 [M.D. Tenn. 1980]); Goldberg v. Kelly, 397 U.S. 254, 267-71 (1970). The purpose of the hearing is to afford a tenant the right to present and rebut evidence. It would be contrary to that purpose to allow the written decision to rely on evidence which the tenant did not have the opportunity to rebut because it was never discussed at the hearing. Therefore, in order for evidence to be "presented" at a hearing such that it may serve as a basis for the final decision, this court concludes that the evidence must be brought to the attention of the parties, including the tenant, so that they may have a meaningful opportunity to address it. This way the hearing officer also will have heard all relevant perspectives when relying on that evidence to make a final determination. Thus, the plaintiff has demonstrated a likelihood of success on the merits on her claim that the hearing officer's decision relied on evidence that was never presented at the hearing.

As to the timing of the hearing officer's decision, the federal regulations require that "[a] copy of the hearing decision shall be furnished promptly to the family." 24 C.F.R. §982.555(e)(6). HACM's administrative plan provides that the written decision must issue within 14 calendar days from the date of the hearing. (Granitz Affidavit, Exh. 2 at 78). The defendant acknowledges that the decision was not issued within the required 14 days.

Nonetheless, the plaintiff has not shown that she was prejudiced or harmed in any way by this delay.

In addition to showing a likelihood of success on the merits, the plaintiff also must establish that she will suffer irreparable harm if the preliminary injunction is not granted and that she lacks an adequate remedy at law. The plaintiff asserts that she and her family will face homelessness if she is terminated from the Section Eight housing program. The defendant maintains that the plaintiff will not suffer irreparable harm if her motion for a preliminary injunction is denied because she was provided adequate notice and a legal informal review hearing. The defendant notes that the cases cited by the plaintiff are inapplicable because they address determinations of eligibility for benefits, not challenges to the legality of informal review hearings.

The reduction of food stamp benefits pending the resolution of a controversy over the sufficiency of the notice has been found to constitute an irreparable harm justifying the issuance of a preliminary injunction, even when the recipients were provided an opportunity to appeal the reduction. Banks, 525 F.2d at 842; see also Vargas, 508 F.2d at 488 (court enjoined defendant from reducing or terminating benefits to needy, blind, and disabled persons pending appeal). Thus, the termination of the plaintiff's Section Eight benefits pending the resolution of her challenge to the legality of that termination constitutes irreparable harm.

The next phase of the preliminary injunction analysis is the balancing of harms phase. The plaintiff contends that the balancing of harms weighs in favor of granting her motion for a preliminary injunction because the defendant will not be significantly harmed by the continuation of the plaintiff's benefits while this case is pending. The defendant asserts that

the balance of harms weighs in its favor because HACM has a waiting list of 3,500 for the Section Eight voucher program.

The court recognizes the difficulty HACM must be facing with a waiting list of 3,500 people for this housing program and is not unsympathetic to its concerns. However, the plaintiff's risk of homelessness prior to resolution of this case weighs heavily in her favor. Furthermore, "'[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor.'" <u>Girl Scouts of Manitou Council, Inc.</u>, 549 F.3d at 1086.

In sum, the plaintiff has demonstrated a likelihood of success on the merits with respect to her challenges to the sufficiency of the notice, whether she was advised that she could cross-examine witnesses at the hearing, and whether the hearing decision was based on a preponderance of evidence presented at the hearing. She further has demonstrated that she will suffer irreparable harm if the preliminary injunction is not granted and that there is no adequate remedy at law. Furthermore, the balance of harms weighs in the plaintiff's favor. Accordingly, this court will grant the plaintiff's motion for a preliminary injunction, enjoining the defendant from enforcing the decision to terminate the plaintiff's Section Eight rent assistance while this case is pending.

## **CONCLUSION**

**NOW, THEREFORE, IT IS ORDERED** that the plaintiff's motion for preliminary injunction be and hereby is **granted.** (Docket # 10).

**IT IS ALSO ORDERED** that, in light of the motion for preliminary injunction, the plaintiff's motion for temporary relief, which was filed in Milwaukee County Circuit Court, be and hereby is **denied as moot**. (Docket # 4).

Dated at Milwaukee, Wisconsin this <u>25th</u> day of January, 2011.

BY THE COURT:


<u>    s/ Patricia J. Gorence    </u>
PATRICIA J. GORENCE
United States Magistrate Judge