# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TAKIA COE,

    Plaintiff,

    v.                                                                                                        Case No. 10-C-915

CITY OF MILWAUKEE
HOUSING AUTHORITY,

    Defendant.

## DECISION AND ORDER

### NATURE OF CASE

On October 1, 2010, the plaintiff, Takia Coe, filed this action against the City of Milwaukee Housing Authority (HACM) in Milwaukee County Circuit Court. The complaint, which was filed pursuant to Wis. Stat. § 68.13, challenges the defendant's decision to terminate the plaintiff's benefits under the Section Eight Housing Choice Voucher Program (Program). On October 14, 2010, the defendant removed this matter to federal court, asserting that the case is governed by the federal regulations which apply to the federally-funded rent assistance program from which the plaintiff was terminated.

On January 25, 2011, after holding a hearing on the matter, this court granted the plaintiff's motion for a preliminary injunction. On March 28, 2011, the plaintiff amended her complaint. The amended complaint was brought pursuant to 42 U.S.C. § 1983 and asserts that the defendant violated the plaintiff's Fourteenth Amendment due process rights and 24 C.F.R. Part 982 when it unlawfully terminated her from the Program. It also re-asserts the plaintiff's previous claim that the defendant violated Wis. Stat. § 68.13.

On June 30, 2011, each party filed a motion for summary judgment. (Docket ## 38, 46). These motions have been fully briefed and will be addressed herein.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); McNeal v. Macht, 763 F.Supp. 1458, 1460–61 (E.D. Wis. 1991). "Material facts" are those facts that under the applicable substantive law "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. A genuine issue of material fact is not shown by "the mere existence of some alleged factual dispute between the parties," Anderson, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." Anderson, 477 U.S. at 252. In determining whether a genuine issue of material fact exists, the court must consider the evidence and all reasonable inferences in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587; Matter of Wade, 969 F.2d 241, 245 (7th Cir. 1992).

The burden of showing the needlessness of a trial – (1) the absence of a genuine issue of material fact and (2) an entitlement to judgment as a matter of law – is upon the movant. However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence that would support a reasonable jury verdict.

Anderson, 477 U.S. at 256; see also, Celotex Corp., 477 U.S. at 324; Fed. R. Civ. P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in [Rule 56] – set out specific facts showing a genuine issue for trial.").

## RELEVANT UNDISPUTED FACTS[1]

The plaintiff, Takia Coe, is an adult resident of Milwaukee County, in the State of Wisconsin. The defendant Housing Authority of the City of Milwaukee (HACM) is, and has been at all times relevant, a public body, corporate and politic, organized pursuant to Wis. Stat. § 66.1201 for the purpose of operating a low-income housing assistance program under the United States Housing Action of 1937, codified at 42 U.S.C. § 1437f et. seq. The Section Eight Housing Choice Voucher Program (Program) at issue is governed by the regulations of the United States Department of Housing and Urban Development (HUD), including 24 C.F.R. Part 982.

The Program assists approximately 5,717 participants in the Milwaukee area. Due to a limited number of rent assistance vouchers, HACM must limit entry into the Program. As a result, the last time the Program was open for registration was in May 2006. At the time the motions for summary judgment were filed, there was a waiting list of approximately 3,400 people for the Program. HACM was not accepting additional people to be placed on the waiting list and did not anticipate doing so until this year at the very earliest.

Program participants are responsible for signing a HUD lease addendum with private landlords and HACM that sets forth the amount of monthly rent the participant must pay.

---

[1] As a general matter, unless accompanied by citation, the relevant facts are taken from the stipulated facts and the parties' proposed findings of fact which are not disputed. Citations to sources of quoted excerpts have been included even when those excerpts are undisputed.

Participants are required to contribute approximately 30% of their household monthly adjusted gross income toward rent. This figure is derived from household income, which may include: employment, social security, unemployment compensation, child support, and other sources of income. HACM then pays the private landlord the difference between the participant's monthly rent payment and the total rent amount.

On September 12, 2008, HACM adopted its most recent Section 8 Administrative Plan [Administrative Plan] consistent with governing federal regulations. The Administrative Plan contains HACM's policies for the operation of the Program, incorporating federal, state, and local law. HACM's grounds for termination of assistance are stated in section 2.10 of the Administrative Plan. One of the stated grounds for termination is [i]f the family violated any family obligations under the program."

Section 8.3 of the Administrative Plan is titled "Obligations of the Participant Family" and includes the following obligation:

> The family must supply any information requested by RAP [Rent Assistance Program] or HUD for use in a regularly scheduled reexamination or interim examination of family income and composition in accordance with HUD requirements.

(Affidavit of Matthew Granitz [Granitz Aff.], Exh. 9 at 13). The Administrative Plan also requires that "[a]ny information supplied by the family must be true and correct." Id. The Administrative Plan defines "income" as "annual income." HUD, which regulates the Program, also defines "income" as "annual income." See 24 C.F.R. § 5.609. HUD requires public housing authorities to "annualize" income prospectively, unless the housing authority selects a shorter period at which it will make a redetermination of income. See 5 C.F.R. § 5.609(d).

According to the Administrative Plan:

> "[the Program] must approve the composition of the assisted family residing in the unit. The family must promptly inform [the Program] of the birth, adoption

> or court-awarded custody of a child. The family must request approval from the Program to add a foster child, foster adult, live-in aide or any other family members as an occupant of a unit. No other person (i.e., no one but members of the assisted family) may reside in the unit unless [the Program] has given approval.

(Granitz Aff., Exh. 9 at 14).

The plaintiff was admitted into the Program for the first time in 1998. On or about April 7, 2009, the plaintiff met with her certification specialist, Tami Rogowski, for her annual recertification review. Prior to the April 2009 meeting, Ms. Rogowski reviewed the plaintiff's file. She runs a wage report for every participant once a year during the annual recertification reviews. At the April 2009 meeting, the plaintiff brought her 2008 tax returns. During this meeting, Ms. Rogowski told the plaintiff that she needed to report all of her income and that there was an issue. In 2008-2009, the only household members permitted to live in the plaintiff's home were the plaintiff and her three children.

The plaintiff's boyfriend, Danta Portis, was present during the April 2009 recertification meeting. During the meeting, the plaintiff informed Ms. Rogowski that she wanted to add Mr. Portis as a household member. Mr. Portis presented illegible documentation and, therefore, the process to add him as a household member could not occur. Mr. Portis was informed that if he wanted to be added as a household member, he needed to provide legible documentation. After the meeting, Mr. Portis never presented legible documentation. Therefore, he was not permitted to be added as an authorized household member because the process was not completed.

On April 17, 2009, the plaintiff signed a form titled, "You Will Be Terminated," which provided in relevant part:

> If you fail to report any change in income or change in your household family size within 2 weeks of the date the change occurred. All changes must be reported to the program in writing.

- 5 -

Case 2:10-cv-00915-PJG   Filed 06/04/12   Page 5 of 18   Document 70

> If you falsify any information, including birth certifications, Social Security Number, income information and/or any other documentation that is presented to the program.

(Granitz Aff., Exh. 4).

On April 19, 2010, the plaintiff received a phone call from Assefa Damte, an employee of the defendant. Later that day, the plaintiff met with Mr. Damte, Jacqueline Loberg, and Gerald Hobson concerning allegations that unauthorized household members were residing in her contracted unit. During this meeting, Ms. Loberg printed out a Consolidated Court Automation Program [CCAP] report which showed that an eviction action was filed against Tamisha Portis and Timmy Lowe in November 2009. Tamisha Portis or Timmy Portis[2] have never been added as household members.

At the April 2010 meeting, Ms. Loberg also printed out a report from the City of Milwaukee Municipal Court System, which listed all municipal citations for Danta Portis and showed his home address as the plaintiff's home address. This report was presented to the plaintiff during the meeting. Records from the State of Wisconsin Government Accountability Board [GAB] show that Danta Portis registered to vote on May 29, 2008. His voting address was the same as the plaintiff's home address. These records also showed that Danta Portis voted in the 2008 presidential election and used the plaintiff's address as his voting address. The plaintiff never completed any form that permitted Danta Portis to be listed as an authorized household member.

After the meeting, Ms. Loberg composed a case note that detailed her recollection of what occurred at the meeting. On April 29, 2010, a Notice Regarding Continued Eligiblity

---

[2] It is unclear whether the parties mistakenly refer to Timmy Lowe as Timmy Portis or whether Timmy Portis is a third person alleged to have lived with the plaintiff.

(Notice) was sent to the plaintiff from the Program. The Notice explained that the Program was questioning the plaintiff's continued eligibility for the following reasons:

> Unreported income. Specifically: You have unreported income from UMOS, Hatch, and Most Precious Transit in the amount of $14,468.75. You now owe the program a total of $4,340.63 in overpayments made on your behalf as a result of your failure to report your income in a timely manner.
>
> Unauthorized household members. Specifically: On 4/19/10 program staff questioned you regarding an allegation that you had unauthorized household members. You advised staff that you moved 3 adults and 4 children into your unit in January 2010 without informing the program. You failed to follow the Program's procedures regarding adding a household member.

(Affidavit of Erika Jacobs Petty [Petty Aff.], Exh. A [Notice]).

The Notice identified four employers of the plaintiff: UMOS, QPS, Hatch, and Most Precious Transit.[3] For her work, the plaintiff earned monetary compensation from UMOS, QPS, Hatch, and Precious Transit. The Notice did not include certain financial figures from specific employers. The Notice also did not identify the unauthorized household members by name. The Notice stated that the unauthorized household members moved in the plaintiff's home in January 2010.

The plaintiff requested an Informal Review Hearing of HACM's decision on May 4, 2010. The form was not faxed to HACM until May 12, 2010. In a section entitled, "reason for request," the plaintiff noted that "the accusations that the program is making [are] not correct."[4] The defendant sent notice on June 11, 2010, that a hearing was scheduled for June 24, 2010.

---

[3] Most Precious Transit is actually Precious Transit. HACM mistakenly used the word "Most" in the Notice.

[4] The court repeatedly has attempted to locate this document so that it may cite to this quotation. However, the defendant's citation to the record is unclear. It reads: Affd. Granitz, Ex. 1, at Dep. Ex. 3. Exhibit 1 to the Affidavit of Matthew Granitz is 126 pages long and contains excerpts from three depositions, all of which also have exhibits attached. The citation is inadequate to direct the court to the proper document and the court has been unable to locate it. Because the fact is undisputed by the plaintiff, the court is including it here, even though the court is unable to properly cite to the quotation.

The June 11, 2010, letter notified the plaintiff that, pursuant to the Administrative Plan, she had the right to review her file before the informal review hearing.

HACM's Administrative Plan requires that "the informal review/hearing be conducted by any person or persons designated by the Housing Authority other than the person who made or approved the decision under review or a subordinate of this person." (Granitz Aff., Exh. 2 at 101). The hearing officer also must "regulate the conduct of the informal review/hearing." Id. The Administrative Plan permits Program participants to retain representation for the hearing. The formal rules of evidence do not apply to informal review hearings.

The hearing was held on June 24, 2010, and was digitally recorded. The defendant prepared a transcript. At the start of the hearing, the hearing examiner explained the procedure. The plaintiff did not ask any questions or indicate that she did not understand the process. None of the witnesses who testified at the hearing did so under oath. The hearing examiner who presided over the plaintiff's case has since retired from HACM.

Lou Williams and Ms. Loberg, employees of the Program, spoke on behalf of the defendant at the hearing. Ms. Loberg referred to a CCAP report that confirmed that Tamisha Portis and Timmy Lowe had been evicted. Ms. Loberg also referred to a third document, described as the "you will be terminated" form signed by the plaintiff more than a year earlier during the 2009 recertification. The document was not marked as an exhibit. The hearing officer referred to "an enterprise income verification report," which was produced by HACM.

After HACM finished with its case, the hearing examiner permitted the plaintiff to present her case. The hearing examiner stated, "All right. All right, Ms. Coe, now it's your turn." (Petty Aff., Exh. C, at 13). The plaintiff stated that she did not have unauthorized household members living with her. She also stated that her daughter's 18-year old boyfriend,

who wanted to reside in her home, came to the Program and lied about unauthorized household members living with her. The plaintiff explained that during her 2009 recertification meeting she attempted to add her boyfriend, Danta Portis, to her lease, but that this request was denied at the time due to insufficient documents and that was why his name was scratched off the paperwork from the 2009 recertification. While the plaintiff was attempting to present documentary evidence regarding the composition of her household, Ms. Williams and Ms. Loberg began to speak. The hearing officer permitted them to do so.

During the hearing, in reference to her April 7, 2009, recertification meeting with Ms. Rogowski, the plaintiff stated, "[w]hen we sat in the meeting, if she went through my tax forms, she said, Ms. Coe do you know that you did not report that income? I said, yes." (Petty Aff., Exh. C, at 16).

The plaintiff called Tamisha Portis as a witness. HACM did not cross-examine Ms. Portis. Ms. Coe called Javon Lattimore as a witness. Mr. Lattimore is the 18-year-old boyfriend of the plaintiff's 17-year-old daughter. Mr. Lattimore stated that he went to the Program out of anger. He further stated that he lied to the Program when he told them that the plaintiff had other people living in her house.

The plaintiff called her daughter, Ariam Chaney-Coe, as a witness. Ms. Chaney-Coe stated that she was mad at her mother for not letting her boyfriend come over. The defendant did not cross examine Ms. Chaney-Coe.

The hearing officer specifically asked Ms. Loberg and Ms. Williams if they had any questions for Ms. Chaney-Coe or Mr. Lattimore. Ms. Williams cross-examined Mr. Lattimore. Mr. Lattimore stated that his mother was on rent assistance and when Ms. Williams suggested that he knew the plaintiff could get kicked out of the Program, Mr. Lattimore stated that at the time, he did not care.

The plaintiff called her fourth witness, Danta Portis. Neither Mr. Portis nor any of the other plaintiff's other witnesses were placed under oath prior to testifying. Mr. Portis confirmed the plaintiff's earlier statement that in 2009 he and the plaintiff attempted to add him to her lease, but that his birth certificate was not acceptable and therefore he could not sign any documentation. He also stated that he did not live with the plaintiff.

HACM's Administrative Plan requires that the informal review hearing officer issue a written decision within 14 calendar days from the date of the hearing. (Granitz Aff., Exh. 2 at 103). The decision must briefly state the reasons for the decision rendered. Id. On September 2, 2010, a "Result of Hearing Review Decision" was mailed to the plaintiff. The decision terminated the plaintiff from the Program. The decision stated in relevant part, "Neither participant nor her witnesses provided any compelling testimony to rebut the findings of [the Program]." (Petty Aff., Exh. D at 4). The hearing examiner found that the plaintiff's witnesses were not credible. The examiner noted that Javon Lattimore changed his story and admitted that he lied. The decision asserts that a "case note" and a "You Will Be Terminated" form from 2008 were submitted into evidence. According to the transcript, those terms were used during the hearing.

## **ANALYSIS**

The defendant seeks summary judgment, asserting that HACM's decision to terminate the plaintiff from the Program was lawful. Specifically, the defendant contends that the plaintiff's Wis. Stat. Chap. 68 claims are without merit as this chapter does not apply to the Program. In addition, the defendant maintains that HACM cannot be liable under Section 1983 because there is no evidence that HACM has a practice, policy, or custom to issue deficient notices of termination to participants. The defendant also asserts that it did not violate the plaintiff's due process rights during her informal review hearing.

- 10 -
Case 2:10-cv-00915-PJG   Filed 06/04/12   Page 10 of 18   Document 70

In her cross-motion for summary judgment, the plaintiff asserts that Wis. Stat. Ch. 68 applies and that the defendant violated the procedures for administrative review when it terminated her from the Program. The plaintiff further contends that the defendant violated her due process rights in several respects: (1) the initial notice of her termination did not have the required specificity; (2) the informal review hearing was deficient because the defendant did not effectively explain the details of the allegations, the defendant did not establish an accurate and complete record of the hearing, and the plaintiff was not permitted to cross-examine witnesses; and (3) the hearing officer did not confine the decision to evidence that was presented at the hearing. The plaintiff maintains that her due process rights were violated pursuant to the practice, policy, or custom of the defendant to issue deficient notices and to conduct "inherently shoddy" informal review hearings. (Plaintiff's Brief in Support of her Motion for Summary Judgment [Plaintiff's Brief] at 16).

With respect to the plaintiff's contention that Chapter 68 of the Wisconsin Statutes applies, this court initially resolved this issue in its decision and order granting plaintiff's motion for a preliminary injunction. (Court's Decision and Order of January 25, 2011, at 4-6). In that decision, the court found that Chapter 68, which provides procedures for review of determinations by municipal authorities, also provides that a municipality may elect not to be governed by that chapter if it adopts a resolution or ordinance which provides procedures for administrative review of decisions. Wis. Stat. § 68.16. The court found that Resolutions 7007 and 7039, which were adopted by the defendant in 1983, clearly expressed the intent of the defendant to opt-out of Wis. Stat. Ch. 68 in the implementation of Section Eight housing programs and simultaneously adopted federal law with respect to the administrative review of determinations of those programs.

Contrary to the defendant's assertions, the court's holding on this issue in its decision on a motion for a preliminary injunction is not a final determination of the issue. See Lac du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, 991 F.2d 1249, 1258 (7th Cir. 1993) (citing Gould v. Lambert Excavating, Inc., 870 F.3d 1214, 1218 [7th Cir. 1989]). A decision on a motion for a preliminary injunction is "itself only preliminary and subject to revision at any time" because "the posture of the case at that time inevitably entails incomplete evidentiary materials and hurried consideration of the issues." Id. Therefore, the issue is not moot and the doctrine of issue preclusion does not apply.

The court has reviewed the plaintiff's most recent arguments in support of her position that Wisconsin law applies. However, the plaintiff does not set forth any new law or argument that persuades this court that its previous decision was incorrect. Therefore, the court concludes that HACM opted-out of Wis. Stat. Ch. 68 in its implementation of Section Eight housing programs when it adopted Resolutions 7007 and 7039. Thus, the court finds that Wis. Stat. Ch. 68 does not apply to this case. Accordingly, the court will deny the plaintiff's motion for summary judgment on this issue.

With respect to the plaintiff's claims that the defendant violated her due process rights, it is important to note that the plaintiff's amended complaint asserts these claims only under 42 U.S.C. §1983 and that HACM is the only defendant. A municipal organization that deprives a person of a federal right may be held liable under Section 1983 only if the deprivation results from a policy, custom, or practice of the organization. Monell v. Dep't. of Social Servs., 436 U.S. 658, 690-91 (1978). To establish the existence of an official policy or custom, a plaintiff must show that the "constitutional injury was caused '*by (1) the enforcement of an express policy of the [city], (2) a widespread practice that is so permanent and well settled as to constitute custom or usage with the force of law, or (3) a person with final policymaking

authority.'" Wragg v. Vill. of Thornton, 604 F.3d 464, 467-68 (7th Cir. 2010)(quoting McCormick v. City of Chicago, 230 F.3d 319, 324 [7th Cir. 2000]).

The plaintiff asserts that the defendant deprived her of due process because the Notice, the informal review hearing, and the decision were all deficient. However, the plaintiff does not contend that her due process concerns with the decision were the result of a policy, custom, or practice of the defendant. Moreover, while the plaintiff maintains that the hearing procedures which deprived her of due process constitute a policy, custom, or practice of the defendant, she states only that "[t]here is no reason to believe that the hearing officer would have treated [the plaintiff] any differently than other participants of the [Program] who chose to challenge their terminations." (Plaintiff's Brief at 16). The plaintiff presents no evidence to support this contention. Therefore, even if the defendant deprived the plaintiff of her due process rights during the hearing and in the written decision, she has not met her burden under § 1983 to establish that these alleged violations were the result of the defendant's policies, customs, or practices.

Accordingly, the plaintiff's motion for summary judgment on the grounds that she was deprived of her due process rights during the hearing and in the written decision will be denied. Similarly, the plaintiff has not established that there is a factual dispute with respect to these issues that would prevent the court from granting summary judgment in favor of the defendant. As such, the defendant's motion for summary judgment on these issues will be granted.

While the plaintiff did not present evidence of the defendant's policies, customs, or practices with respect to informal review hearings and written decisions, she did submit 69 notices regarding continued eligibility that were sent to Program participants between October 1, 2009, and September 30, 2010. (Petty Aff., Exh. I). The parties dispute many of the particular facts regarding these notices of termination. However, the defendant does not deny

that the notices at issue are true and accurate copies of notices that the Program sent to participants in 2009 and 2010. Therefore, the court has considered the notices.

The federal regulations which apply to Section Eight housing programs require that the notice must "contain a brief statement of reasons for the decision." 24 C.F.R. §982.555(c)(2)(I). The purpose of the notice is to "'enable [the tenant] to prepare rebuttal evidence to introduce at his hearing appearance.'" Driver v. Housing Auth. of Racine County, 289 Wis. 2d 727, 739 (Wis. Ct. App. 2006) (quoting Edgecomb v. Housing Auth., 824 F. Supp. 312, 315 [D. Conn. 1993]). Accordingly, a sufficient notice would "specify *who* had violated *what* specific obligation and *when* the violation occurred." Id. at 732 (emphasis in original). Courts also have required that notices provide the source of any information obtained by the housing authority. Id. at 739 (quoting Billington v. Underwood, 613 F.2d 91, 94 [5th Cir. 1980]). The notice must "adequately explain [the] rationale" of the housing authority. Bratcher v. Housing Authority of the City of Milwaukee, 327 Wis. 2d 183, 200 (Wis. Ct. App. 2010).

In Banks v. Trainor, 525 F.2d 837 (7th Cir. 1975), for example, the court addressed the sufficiency of notices sent to food stamp recipients. The notices stated that the recipients would need to pay more for food stamps because the agency had adopted a new method of calculating benefits. The court held that the notices were insufficiently specific because they did not reveal how income figures were calculated or provide the data underlying those calculations. Id. at 838-42 ("The notices sent to this class did not contain a breakdown of income and deductions so that the recipients could determine the accuracy of the computations.").

When addressing the sufficiency of notices provided to recipients of housing benefits, courts have found that the written notice must be sufficiently specific, even if the tenant has actual notice of the details regarding her termination. Driver, 289 Wis. 2d at 732. Otherwise,

the court explained that it would be an invitation for "housing authorities to dispense with proper notice whenever they determined for themselves that the tenant 'must have known' the basis for the allegations against them [sic]." Id.

A careful review of the 69 notices shows that 33 provide notice of termination due to unreported income. Of these 33, not a single notice specifies how the defendant calculated the amount of overpayment the participant owes the Program. For example, a notice sent on April 28, 2010, states only**:**

> Failure to report household income. Specifically: You failed to declare income from REDACTED in the amount of $14,158.15. You now owe a total of $4,247.45 in overpayments made on your behalf as a result of your failure to report this income.

(Petty Aff., Exh. I at 13).

Moreover, an overwhelming majority of these 33 notices fail to set forth the exact amount of unreported income the participant is alleged to have earned. Specifically, a notice sent February 11, 2010, reads only as follows:

> Failure to report income. Specifically: You failed to report employment with REDACTED from 6/26/08 - 12/31/09. You now owe a total of $5,659 in overpayments made on your behalf as a result of your failure to report this income.

Id. at 10. Another notice sent on April 29, 2010, reads:

> Failure to report income. Specifically: You failed to report your income with REDACTED salon since June of 2007. You now owe the program a total of $17,550 in overpayments made on your behalf.

Id. at 14. See also, id. at 2, 11, 15 -25, and 27-42.

None of these notices explains the basis for the defendant's calculation of overpayments. In addition, as already shown, the majority of the notices do not indicate the amount of unreported income the participant is believed to have earned. Thus, the Program participants who received such notices were unable to verify that the calculation of the

overpayment amount was accurate. These notices are similar to those found deficient in Banks. Acccordingly, this court finds these notices insufficient to comport with due process requirements.

Furthermore, in light of the fact that not a single notice addressing unreported income issued during a full year was sufficient, this court finds that the defendant had "a widespread practice" of issuing deficient notices "that is so permanent and well settled as to constitute custom or usage with the force of law." Wragg, 604 F.3d at 467-68(quoting McCormick, 230 F.3d at 324). Therefore, this court concludes that this policy, practice, or custom of issuing insufficient written notice of termination resulted in a deprivation of the plaintiff's due process rights.

The defendant disputes many of the plaintiff's proposed findings of fact with respect to these notices by asserting that the participants' names and employer information were redacted, so there was no way to know if the notices were insufficient because the defendant may have provided the missing information to the participants in face to face meetings or via telephone. The defendant contends that the written notices must be viewed in the context of the actual notice the participant received. However, in Driver, the court held that "adequate notice" is defined as "written notice" and that there is no exception for actual notice. 289 Wis. 2d at 743-45 (citing Morales v. McMahon, 223 Cal. App. 3d 184 [Ct. App. 1990]; Ortiz v. Eichler, 616 F. Supp. 1046, 1062 [D. Del. 1985]; Vargas v. Trainor, 508 F.2d 485, 489-90 [7th Cir. 1974]). Indeed, federal regulations require that "the notice must be in writing." 24 C.F.R. § 982.5. Therefore, regardless of whether the recipients of these notices had actual knowledge of how the overpayment amounts were calculated and/or the amount of unreported income, the notices were deficient.

In sum, the court will grant summary judgment for the defendant on the issues related to the hearing procedures and the written decision and deny summary judgment for the plaintiff on these issues. However, because the plaintiff has established that the defendant's policy, practice, or custom of issuing deficient written notices of termination resulted in the deprivation of her due process rights, the plaintiff's motion for summary judgment will be granted on this issue.

As relief for the deprivation of her rights, the plaintiff seeks a permanent injunction maintaining her eligibility for Section 8 housing. The plaintiff asserts that in the absence of a permanent injunction, she will lose the rent assistance benefits she receives through the Program. The defendant disagrees that a permanent injunction is appropriate in this case.

A permanent injunction may only be issued in extraordinary circumstances when a plaintiff has shown that (1) she has suffered an irreparable injury, (2) that no adequate remedy at law exists, (3) that the harm to her sufficiently outweighs the harm to the defendant, and (3) that the public interest would not be disserved by a permanent injunction. Ebay Inc., et. al. v. MercExchange, L.L.C., 547 U.S. 388, 391; 126 S.Ct. 1837 (2006).

Here, the harm suffered by the plaintiff was a deprivation of her due process rights. This injury is not irreparable because this court may order the defendant to issue a new notice that comports with due process. Moreover, this court notes that a permanent injunction may have adverse effects on the public. It is undisputed that approximately 3,400 people are on the waiting list to receive Program benefits. Considering all the factors, the court finds that a permanent injunction is not appropriate in this case. Accordingly, the defendant is ordered to provide the plaintiff with a new notice, and a new hearing if she so requests after receiving the notice, which comports with due process and federal regulations.

## CONCLUSION

**NOW, THEREFORE, IT IS ORDERED** that the defendant's motion for summary judgment is **granted in part and denied in part** as stated herein. (Docket #38). The defendant shall provide the plaintiff a new notice which complies with due process and federal regulations and if requested a new informal review hearing.

**IT IS ALSO ORDERED** that the plaintiff's motion for summary judgment is **granted in part and denied in part** as stated herein. (Docket #46).

**IT IS ALSO ORDERED** that this case be and hereby is dismissed.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 4th day of June, 2012.

BY THE COURT:

s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge