# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TAKIA COE,

    Plaintiff,

    v.                                                                  Case No. 10-C-915

CITY OF MILWAUKEE
HOUSING AUTHORITY,

    Defendant.

# DECISION AND ORDER

## NATURE OF CASE

On October 1, 2010, the plaintiff, Takia Coe, filed this action against the City of Milwaukee Housing Authority (HACM) in Milwaukee County Circuit Court. (Docket #1). The complaint, which was filed pursuant to Wis. Stat. § 68.13, challenged the defendant's decision to terminate the plaintiff's benefits under the Section Eight Housing Choice Voucher Program (Program). On October 14, 2010, the defendant removed this matter to federal court, asserting that the case is governed by the federal regulations that apply to the federally-funded rent assistance program from which the plaintiff was terminated.

On January 25, 2011, after holding a hearing on the matter, this court granted the plaintiff's motion for a preliminary injunction, which allowed the plaintiff to continue her participation in the Program while this case was pending. (Docket #28). On March 28, 2011, the plaintiff amended her complaint and included a claim pursuant to 42 U.S.C. § 1983. (Docket #34).

On June 30, 2011, each party filed a motion for summary judgment. By Decision and Order dated June 4, 2012, this court granted in part and denied in part each party's motion for summary judgment. The court granted the plaintiff's § 1983 claim with respect to whether the notice issued by the defendant was constitutionally sufficient. See Court's Decision and Order of June 4, 2012, at 18 (Docket #70). The court denied the plaintiff's other § 1983 claims and the Wis. Stat. § 68.13 claims and granted the defendant's motion on these grounds. See id. Judgment was entered accordingly on June 5, 2012. See Judgment of June 5, 2012, at 1 (Docket #71).

On July 3, 2012, the plaintiff filed a motion to alter or amend the judgment pursuant to Rules 59(e) and 60(a), (b)(1), and (b)(6) of the Federal Rules of Civil Procedure. By Decision and Order dated December 19, 2012, this court granted in part and denied in part the plaintiff's motion to alter or amend the judgment. The court amended its June 4, 2012 decision to award the plaintiff $1.00 in damages on her §1983 claim with respect to the sufficiency of the notice. See Court's Decision and Order of December 19, 2012, at 11 (Docket #77). The court declined to set aside the defendant's August 25, 2010 hearing decision, which terminated the plaintiff's benefits under the Program. See id. at 9–10. The judgment was amended accordingly on December 21, 2012. See Judgment of December 21, 2012, at 1 (Docket #78).

On January 4, 2013, the plaintiff, who is represented by Legal Action of Wisconsin (Legal Action), filed a motion in which she requested attorney's fees and costs pursuant to 42 U.S.C. § 1988 and Rule 54(d)(2) of the Federal Rules of Civil Procedure. The defendant filed a brief in opposition to the plaintiff's request for attorney's fees. The plaintiff

filed a reply brief, and the defendant filed a response brief.  Now fully briefed, this motion will be addressed herein.

## MOTION FOR ATTORNEY'S FEES AND COSTS

In the United States, "each party in a lawsuit ordinarily shall bear its own attorney's fees unless there is express statutory authorization to the contrary." Hensley v. Eckerhart, 461 U.S. 424, 429 (1983). The Civil Rights Attorney's Fees Awards Act of 1976 provides that the "prevailing party" in certain civil rights actions, including suits brought under § 1983, may recover "a reasonable attorney's fee as part of the costs." 90 Stat. 2641, 42 U.S.C. § 1988(b). Claims for "attorney's fees and related nontaxable expenses" must ordinarily be made by motion. Fed. R. Civ. P. Rule 54(d)(2)(A).

Similarly, Rule 54(d)(1) of the Federal Rules of Civil Procedure provides that costs other than attorney's fees are allowed to the "prevailing party" unless the court directs otherwise. The court of appeals for this circuit has "consistently interpreted Rule 54(d) as providing a strong presumption that the prevailing party will recover costs." Weeks v. Samsung Heavy Industries Co., Ltd., 126 F.3d 926, 945 (7th Cir. 1997). Although the ultimate decision to award costs rests within the district court's discretion, "[t]he presumption in favor of awarding costs to the prevailing party is difficult to overcome." Id. Thus, the district court's discretion is narrowly confined, and "the court must award costs unless it states good reasons for denying them." Id.

## ANALYSIS

The plaintiff asserts that she is entitled to $64,395 in attorney's fees and $1190.45 in costs because she is the prevailing party in this lawsuit. The plaintiff maintains that she obtained everything that she set out to recover, namely the preservation of her benefits

under the Program and a new hearing. Conversely, the defendant asserts that the plaintiff's request for attorney's fees and costs should be denied because the plaintiff is not a prevailing party.

## I. Attorney's Fees

The plaintiff argues that she is a prevailing party for purposes of § 1988(b) because she prevailed on at least one "significant issue." Moreover, the plaintiff contends that recovering nominal damages is sufficient for prevailing party status, especially given that she never sought significant monetary relief. The plaintiff also maintains that there are no special circumstances justifying the denial of fees and that the methodology used to calculate the fees was reasonable. Finally, the plaintiff insists that the number of hours requested is reasonable as the defendant's litigation strategy unnecessarily made the case more complex.

The defendant argues that the plaintiff is not a prevailing party because she did not obtain the relief she sought. The defendant also contends that the plaintiff lost on three of her four claims and thus achieved minimal success. Notwithstanding whether the plaintiff qualifies as a prevailing party, the defendant maintains that the fees requested are unreasonable and that the plaintiff's decisions increased the litigation costs. Finally, the defendant insists that special circumstances justify the denial of fees in this case. Specifically, the defendant argues that the alleged wrongdoing occurred when Legal Action was not permitted to claim attorney's fees; the interests of justice require a denial or reduction of fees because awarding fees against HACM would have adverse effects on the public; and Congress is the proper branch to appropriate funds between Legal Action and HACM, two federally-funded organizations.

### A. Prevailing Party

A plaintiff qualifies as a prevailing party under § 1988 "when actual relief on the merits of [her] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar v. Hobby, 506 U.S. 103, 111–12 (1992). Although the plaintiff must "'succeed on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit,'" the Supreme Court has described this standard as being very "generous." Hensley, 461 U.S. at 433 (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278–79 [1st Cir. 1978]). For example, the Supreme Court clarified that the plaintiff need not prevail on the "central issue" in the litigation. Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 790–91 (1989). Likewise, a plaintiff who is awarded only nominal damages still qualifies as a prevailing party under § 1988. Farrar, 506 U.S. at 112; see also Estate of Borst v. O'Brien, 979 F.2d 511, 515 (7th Cir. 1992).

Here, the plaintiff is a prevailing party for purposes of obtaining attorney's fees pursuant to § 1988(b). The fact that the plaintiff received $1.00 damages on her notice claim is sufficient to establish prevailing party status. See Farrar, 506 U.S. at 112. Nevertheless, the plaintiff achieved more than merely nominal damages. This court found that the defendant's policy, practice, or custom of issuing deficient written notices of termination violated the plaintiff's due process rights. Thus, this court ordered the defendant to provide the plaintiff a new, constitutionally valid notice and a new informal review hearing, if requested. Court's Decision and Order of June 4, 2012 at 18. Furthermore, the plaintiff attained one of her main goals – the preservation of her benefits

in the Program during the pendency of this action.[1] Accordingly, the plaintiff has obtained actual relief on the merits that has materially altered the legal relationship between her and the defendant.

Finding that the plaintiff is a prevailing party does not entitle her to attorney's fees, however. Rather, the plaintiff must also demonstrate that the fees requested are reasonable. Hensley, 461 U.S. at 433.

### B. Reasonableness of Fees

Although "[d]istrict courts have wide latitude in determining attorney's fee awards," the fee is ordinarily calculated using the two-step "lodestar" method. Strange v. Monogram Credit Card Bank of Ga., 129 F.3d 943, 945–46 (7th Cir. 1997) (citing Estate of Borst, 979 F.2d at 514). First, the court calculates the "lodestar" – "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley, 461 U.S. at 433. At this initial step, "the fee claimant bears the burden of substantiating the hours worked and the rate claimed." Strange, 129 F.3d at 946. Thus, the court "should exclude from this initial fee calculation hours that were not 'reasonably expended,'" and counsel for the prevailing party must exercise "billing judgment" by excluding hours that are "excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 434 (internal citations omitted). Second, the court may increase or decrease the lodestar amount in light of various factors. See id.

Here, the plaintiff has requested $64,395 in attorney's fees, which was calculated for

---

[1] By itself, the preservation of benefits would be insufficient to confer upon the plaintiff prevailing party status. See Sole v. Wyner, 551 U.S. 74, 86 (2007) (obtaining a preliminary injunction does not establish prevailing party status if the plaintiff fails to succeed on the merits) and Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 589, 605 (2001) (holding that [a] defendant's voluntary change in conduct . . . lacks the necessary judicial *imprimatur* on the change").

286.2 hours of work at a rate of $225 per hour. The defendant challenges the plaintiff's calculations of the lodestar – the "hours reasonably expended multiplied by the reasonable hourly rate -- as unreasonable." Johnson v. GDF, Inc., 668 F.3d 927, 929 (7th Cir. 2012). Specifically, the defendant maintains that many of the hours requested by the plaintiff were not reasonably expended on the litigation because the plaintiff consistently recycled losing arguments. The defendant also asserts that the plaintiff's reliance on the Laffey[2] Matrix is inappropriate because the Matrix is based on legal rates from the District of Columbia and has been questioned by some courts. Finally, the defendant contends that the requested rate is not supported by quantifiable evidence.

In support of her fee application, the plaintiff's attorney, Erika Jacobs Petty, submitted her own affidavit. In her affidavit, Attorney Petty noted that she exercised billing judgment in reducing the figure to 286.2 hours, and she attached detailed time records for her work on this case. Likewise, Attorney Petty's supervising attorney, Jeffery R. Myer, reviewed the contemporaneous time records and concluded that the hours claimed were reasonable. In reaching this conclusion, Attorney Myer reduced the amount of time expended exclusively on non-federal claim legal arguments, compared the amount of time billed by the defendant's attorneys, and excluded time he spent working on the case, even for matters on which he was primarily responsible.

The amount of time claimed is reasonable considering the procedural nature of the litigation. The case was initially filed in state court, where the plaintiff alleged only violations of Wisconsin law. After the defendant filed a petition to remove the matter to federal court, the plaintiff appropriately spent a number of hours researching whether

---

2 Laffey v. Northwest Airlines, Inc., 764 F.2d 4 (D.C. Cir. 1984).

removal was applicable. Instead of contesting removal, the plaintiff amended her complaint to include three federal claims pursuant to § 1983. As a result, each party blames the other party's litigation strategy for driving up the costs. The court, however, declines to place blame on either party because each litigation choice was reasonable given the posture of the case. Nevertheless, civil rights litigation is typically "lengthy and demands many hours of lawyers' services." See Hensley, 461 U.S. at 436. Thus, the court concludes that the 286.2 hours expended on the litigation is reasonable.

With respect to the $225 hourly rate requested by the plaintiff, reasonable fees "are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel." Blum v. Stenson, 465 U.S. 886, 895 (1984). Generally, "an attorney's actual billing rate for similar litigation is appropriate to use as the market rate." Pickett v. Sheridan Health Care Ctr., 664 F.3d 632, 640 (7th Cir. 2011). However, when this evidence is unavailable, the court should consider the billing rates of comparable attorneys. Id. Accordingly, a rate is "normally deemed to be reasonable" if the claimant provides evidence that the requested rate is "in line with those in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum, 465 U.S. at 895, n.11.

In her affidavit, Attorney Petty states that she has been licensed to practice law since May 2006 and that she is a staff attorney with Legal Action, a non-profit firm that does not bill its clients. Consequently, Attorney Petty based the requested rate in part on the Laffey Matrix, a tool originating in the District of Columbia Circuit to calculate rates in fee-shifting cases given the attorney's level of experience. According to the Matrix, an attorney with four to seven years of experience can expect to charge $275–290 per hour. Attorney

Petty maintains that, adjusting for cost of living differences, the 2012 rate for a Milwaukee attorney is $243 per hour. In addition, she asserts that two colleagues in private practice with the same years of experience as her charge between $200 and $225 per hour.

Attorney Myer's affidavit also attested to the reasonableness of the requested rate. Attorney Myer acknowledged that this is the first case on which Attorney Petty has made a claim under a fee-shifting statute. Nevertheless, he stated that $225 per hour is reasonable in this case because the fee is below the Laffey Matrix and is consistent with Attorney Petty's experience and with claims made by other Legal Action attorneys. Attorney Myer noted that he has previously settled fee claims for more experienced attorneys at $385 and $450 per hour, figures that were consistent with, but less than the Laffey Matrix adjusted downward for Milwaukee. Thus, Attorney Petty did not merely rely on her own affidavit, nor on the Laffey Matrix, which has been questioned by the defendant and other courts. See, e.g., Covington v. District of Columbia, 57 F.3d 1101, 1109 (D.C. Cir. 1995) (calling the Laffey Matrix a "crude tool" that provides only a useful starting point that must be supplemented by other evidence).

Rather, Attorney Petty also provided the affidavit of Attorney Myer, who has experience with fee awards to other Legal Action attorneys. Both Attorney Petty and Attorney Myer attested that two private practice attorneys with the same amount of experience as Attorney Petty charge a comparable rate, though neither attorney uses contingent billing, which is typical of civil rights litigation. Thus, the plaintiff has provided sufficient evidence to establish $225 as a reasonable hourly rate in the present action. Accordingly, the court concludes that both the number of hours expended and the hourly rate requested by the plaintiff are reasonable.

### C. Modification

After the claimant provides evidence establishing her market rate, "the burden shifts to the defendant to demonstrate why a lower rate should be awarded." Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 554–55 (7th Cir. 1999). In this case, the defendant argues that the plaintiff's level of success does not warrant an award for attorney's fees. Specifically, the defendant asserts that the plaintiff failed to obtain a permanent injunction and her case did not set any major precedent. Rather, the defendant contends that the plaintiff received only nominal damages and a more detailed notice of the allegations against her.

The court must provide a "'concise but clear explanation'" for "any modification" to the "submitted lodestar." Strange, 129 F.3d at 946 (quoting Estate of Borst, 979 F.2d at 515-16). Accordingly, "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" Farrar, 506 U.S. at 114 (quoting Hensley, 461 U.S. at 436). In analyzing the degree of success, the court must consider (1) whether the plaintiff prevailed on claims that were unrelated to the successful claims, and (2) whether the level of success justifies the hours requested. Hensley, 461 U.S. at 434. "Where a lawsuit consists of related claims," a plaintiff who achieves "excellent results . . . should recover a fully compensatory fee," and the "award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." Id. at 435, 440. "Application of this principle is particularly important in complex civil rights litigation involving numerous challenges to institutional practices or conditions" because "[t]his type of litigation is lengthy and demands many hours of lawyers' services." Id. at 436. Moreover, "the public as a whole has an interest in the vindication of the rights conferred by

statutes enumerated in §1988, over and above the value of a civil rights remedy to a particular plaintiff." Id. at 445, n.4.

The court of appeals for this circuit utilizes "the three part test from Justice O'Connor's concurrence in Farrar . . . for determining whether a 'prevailing party' who receives only nominal damages is entitled to attorney's fees under 42 U.S.C. § 1988." Briggs v. Marshall, 93 F.3d 355, 361 (7th Cir. 1996). The three factors are: "(1) the difference between the judgment recovered and the recovery sought; (2) the significance of the legal issue on which [the] plaintiff prevailed; and (3) the public purpose of the litigation." Id. Consequently, where a plaintiff receives only nominal damages, the fee is "likely to be zero . . . unless the case established an important precedent, decreed declaratory or injunctive relief, or otherwise conferred substantial benefits not measured by the amount of damages awarded." Hyde v. Small, 123 F.3d 583, 584 (7th Cir. 1997). Nevertheless, "[t]here is no precise rule or formula for making these determinations," and the ultimate decision regarding the reasonableness of an attorney's fee award lies within the discretion of the district court. Hensley, 461 U.S. at 436–37. "[T]he most significant of the three factors is the difference between the judgment recovered and the recovery sought." Briggs, 93 F.3d at 361 (citing Maul v. Constan, 23 F.3d 143, 145 [7th Cir. 1993]).

Here, although the plaintiff prevailed on only one of her four claims and received only $1.00 in damages, the relief she obtained was quite significant. The plaintiff never sought significant monetary relief; thus, she did "ask[] for a bundle and [get] a pittance." Farrar, 506 U.S. at 120 (O'Connor, J., concurring); see also, Hyde, 123 F.3d at 585 ("When the civil rights plaintiff aims small, and obtains an amount that is significant in relation to that aim [it need not reach the target], [s]he is prima facie entitled to an award of fees even

if the case establishes no precedent."). Rather, the plaintiff sought a permanent injunction (1) rescinding the defendant's termination decision and ordering the defendant to reinstate her in the Program, and (2) enjoining the defendant from holding a new hearing based on the same allegations in the unlawful notice.

Although this court did not grant a permanent injunction, the plaintiff was able to maintain her benefits throughout the proceedings. Moreover, the court determined that the defendant's practice of issuing deficient written notices of termination violated the plaintiff's due process rights, and the court ordered the defendant to provide the plaintiff a new, constitutionally valid notice and a new informal review hearing, if requested. Consequently, the first factor weighs in favor of a full fee award because there is no substantial difference between the judgment recovered
and the relief sought.

The second factor, the least important of the three, focuses on the extent to which the plaintiff succeeds on her theory of liability. Cartwright v. Stamper, 7 F.3d 106, 109 (7th Cir. 1993). Here, all four claims were interrelated as they concerned the defendant's decision to terminate the plaintiff from the Program. In particular, the plaintiff challenged the administrative procedures utilized by the defendant, including the sufficiency of the notice, the hearing procedures, and the defendant's written termination decision. In granting summary judgment in favor of the defendant on the remaining claims, the court did not determine that the hearing and written decision were without issue. Rather, the court found that the plaintiff failed to meet her burden of establishing that these alleged violations were the result of the defendant's policies, practices, or customs. The court declared that the notice of termination was unlawful and, therefore, the plaintiff was entitled to a new

notice and a new hearing, if requested (and necessarily a new written decision). Accordingly, though the plaintiff prevailed on only one claim, in essence she achieved much of what she sought. Consequently, the second factor also weighs in favor of a full fee award because the plaintiff generally succeeded on her theory of liability.

"[T]he third factor considers the public purpose served by the victory." Id. "Given that §1983 claims necessarily involve the violation of a right, privilege or immunity, attorney's fees are appropriate . . . only when the plaintiff's victory entails something more than merely a determination that a constitutional guarantee was infringed." Briggs, 93 F.3d at 361 (citing Maul, 23 F.3d at 146). Here, the nature of the plaintiff's recovery does serve a public purpose. In determining that the defendant had a practice of issuing deficient written notices of termination to other persons in the Program, the court found that all thirty-three notices related to unreported income were similarly insufficient. Therefore, other Program participants benefited from the plaintiff's case and the future deterrent effect is likely to be substantial. Consequently, the third factor weighs in favor of a full fee award.

In arguing that $225 per hour is an excessive rate in this case, the defendant focuses on the twelve factors that courts typically consider when the prevailing party achieves more than simply nominal damages.[3] The defendant maintains that Legal Action

---

[3] The twelve factors are:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Estate of Borst, 979 F.2d at 515 n.2 (citing Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717–19 [5th Cir. 1974]).

has argued similar rent assistance claims in the past, Attorney Petty was not precluded from taking other work, and the $225 rate has no support in the Milwaukee market. The defendant also asserts that the plaintiff was awarded only $1.00 in damages and has no ongoing relationship with Legal Action, and attorneys with much more experience than Attorney Petty have been awarded rates of $190 and $225 per hour.

The court finds these arguments unavailing. Although Legal Action has experience with notice-related rent assistance claims, the case at hand involved different procedural issues that necessitated considerable time by Attorney Petty and Attorney Myer. In addition, selecting two cases from a different district where attorneys with more experience were awarded a rate similar to the one requested here provides little guidance about the prevailing market rate in Milwaukee. Finally, Legal Action is a non-profit organization that provides legal representation to low income individuals. As such, Attorney Petty does not have a history of billing clients or settling fee claims. Despite this hurdle, the plaintiff was able to provide evidence that justifies the requested rate given the specific issues in dispute. Accordingly, the defendant has not provided convincing evidence to justify a lower rate.

Overall, the relevant indicia of success all point to a single conclusion: the plaintiff's victory conferred substantial benefits not measured by the amount of damages awarded. The plaintiff achieved "excellent results" in light of the fact that she aimed relatively low. Therefore, the fee award should not be reduced simply because the plaintiff failed to prevail on every claim raised in the lawsuit.

### D. Special Circumstances

The defendant's argument that special circumstances justify the denial of fees in this case is without merit. Although it is true that "'special circumstances' may militate against an award of fees to a prevailing party," this limitation "is applicable only to unusual cases," and "the burden of demonstrating the existence of special circumstances is on the defendant." Crosby v. Bowling, 683 F.2d 1068, 1072 (7th Cir. 1982).

Legal Action, a federally-funded legal services corporation, is permitted to collect attorney's fees. See 2010 Consolidated Appropriations Act, Pub. L. No. 111-117, 123 Stat. 3034, 3157 (Dec. 16, 2009). The regulations enforcing this legislation went into effect on April 26, 2010. See 45 C.F.R. pt. 1609 (repealing 45 C.F.R. pt. 1642). The fact that Legal Action was not allowed to claim attorney's fees from 1995 until April 2010 has no impact on the plaintiff's request for fees here. Moreover, when the statutory restriction was lifted, the regulations were amended as well. These regulations specifically considered the timing of the change:

> With the repeal of the restriction, recipients are permitted to claim and collect and retain attorneys' fees with respect to any work they have performed for which fees are available to them, without regard to when the legal work for which fees are claimed or awarded was performed.

Fee-Generating Cases, 75 Fed. Reg. 21,506, 21,508 (Apr. 26, 2010). The regulations further state that they declined to limit claims for attorney's fees to only "new" work "because the attorneys' fees prohibition applies to the particular activity of seeking and receiving attorneys' fees, but is irrelevant to the permissibility of the underlying legal work." Id. Similarly, the regulations note that declining to place limits on the lifted restriction is most beneficial because potential recipients can use the lift as leverage in negotiating

"ongoing cases." Accordingly, the restriction on Legal Action related to the collection of attorney's fees is not a "special circumstance" in this case as that restriction was lifted over two years before the fee claim was made.

The defendant also argues that awarding fees in this case would have adverse effects on the public because HACM administers a program that provides assistance to thousands of low income individuals. Although this court considered the potential adverse effects on the public in denying a permanent injunction, the court declines to accept this rationale as a reason for denying attorney's fees. The court found that the defendant had a custom and practice of issuing deficient termination notices. Consequently, the interests of justice favor a fee award because the public has an interest in HACM providing constitutionally valid notices to the many individuals who depend on the benefits of the Program.

The defendant further maintains that a fee award from HACM to Legal Action, both federally funded agencies, would violate the separation of powers doctrine and run afoul of the political question doctrine. The defendant provides no authority to support this contention, save for a listing – with no application – of factors used to determine whether a political question is present. This single citation does not satisfy the defendant's burden of establishing the existence of a "special circumstance."

In sum, no "special circumstances" militate against a fee award to the plaintiff, the prevailing party in this case. Accordingly, the plaintiff's motion with respect to her request for $64,395 in attorney's fees will be granted.

## II. Costs

The plaintiff also argues that she is entitled to $1190.45 for court reporter fees

- 16 -
Case 2:10-cv-00915-PJG   Filed 04/10/13   Page 16 of 18   Document 90

related to three depositions.  Rule 54(d)(1) of the Federal Rules of Civil Procedure states that "costs other than attorney's fees" are generally awarded to the prevailing party.  This rule is supplemented by local rules, which state that deposition costs are taxable if "reasonably necessary for use in the case."  See Civ. L. R. 54(b)(2) (E.D. Wis.).  Consequently, "only misconduct by the prevailing party worthy of a penalty or the losing party's inability to pay will suffice to justify denying costs."  Weeks, 126 F.3d at 945.  Therefore, "the losing party must demonstrate that 'there has been some fault, misconduct, default, or action worthy of penalty'" by the prevailing side.  Hudson v. Nabisco Brands, Inc., 758 F.2d 1237, 1242 (7th Cir. 1985) (quoting Delta Air Lines v. Colbert, 692 F.2d 489, 490 [7th Cir. 1982]).

The defendant maintains that the plaintiff is not entitled to costs because she failed to follow proper procedures in requesting these costs.  In particular, the defendant contends that the plaintiff failed to file a bill of costs with her initial motion, as required by local court rules, and the specific amount requested is inconsistent throughout her filings.  (Compare Affidavit of Erika Jacobs Petty [$1190.45] [Docket #81] with Plaintiff's Brief in Support of Motion for Costs and Fees [$1194.45] [Docket #80]).

The court finds that the defendant has not demonstrated sufficient reasons to penalize the plaintiff by denying her costs.  Because the court has determined that the plaintiff is a prevailing party, a strong presumption exists that she should be awarded costs.  Although the plaintiff did not file a bill of costs with her initial motion, she did request "costs in the amount of $1190.45 for court reporter fees relating [to] three depositions."  (Docket #81).  Thereafter, the plaintiff submitted an itemization of these costs along with her reply brief.  (Docket #88-1).  The plaintiff's failure to timely file this supporting documentation is

not misconduct sufficient to overcome the strong presumption in favor of awarding her costs. Moreover, with one exception, the plaintiff consistently represented her costs as $1190.45. See Plaintiff's Notice of Motion and Motion (Docket #79); Affidavit of Erika Jacobs Petty (Docket #81), and she confirmed the accuracy of this figure in her subsequent documents after the defendant commented on the discrepancy. See Plaintiff's Reply (Docket # 87); Invoices (Docket #88-1).

On one occasion, the plaintiff requested a different amount – $1194.45 rather than $1190.45. This differing amount appears to be an innocent mistake. Viewing the relevant documents together – notably the attached invoices – the depositions clearly totaled $1190.45. Thus, the court concludes that the plaintiff should not be penalized for a single, minor transcription error. Furthermore, the costs related to the depositions were "reasonably necessary" for use in the plaintiff's case; the defendant does not argue otherwise. Accordingly, the plaintiff's motion with respect to her request for costs will be granted.

In sum, for the reasons stated herein, the plaintiff's motion for attorney's fees in the amount of $64,395 and her request for costs in the amount of $1190.45 will be granted.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the plaintiff's motion for attorney's fees and request for costs be and hereby is **granted** as stated herein. (Docket #79).

Dated at Milwaukee, Wisconsin, this 10th day of April, 2013.

BY THE COURT:

s/Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge